**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

RAVEN WOLF C. FELTON          )
JENNINGS II, et al.,          )
                              )
      Plaintiffs,            )
                              )
    v.                       )      No. 4:20-CV-00584 JAR
                              )
CITY OF UNIVERSITY CITY,      )
MISSOURI,                     )
                              )
      Defendant.             )

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Plaintiffs' Motion for Summary Judgment. (Doc. No. 54). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted in part and denied in part.

**I.      Background[1]**

Plaintiffs Raven Wolf C. Felton Jennings II ("Jennings") and Raymond Douglas ("Douglas") are street musicians who perform in the University City Loop Special Business District ("the Loop"). On April 28, 2020, Plaintiffs filed this lawsuit against the City pursuant to 42 U.S.C. § 1983 to challenge the constitutionality, both facially and as applied, of University City Ordinance § 215.720: Obstructing Public Places (the "Original Ordinance"), which prohibited any person from standing or remaining idle in a public place in such manner so as to

---

[1] The background facts are taken Plaintiffs' Statement of Uncontroverted Material Facts ("SOF") (Doc. No. 56). The City argues that many of Plaintiffs' facts relate to events that occurred prior to the amendment of the Original Ordinance and as such are immaterial as to anything other than Plaintiffs' claim for nominal damages. (<u>See</u> SOF at ¶¶ 9-82; 135-176; 209-219). To the extent that an impermissible policy or custom could be inferred from the City's past conduct under the Original Ordinance, the Court has considered those facts.

obstruct any public sidewalk "by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of … pedestrians[.]"[2] Plaintiffs also challenged the constitutionality of alleged City policies forbidding individuals engaged in speech or performance from remaining stationary on public sidewalks ("Non-Stationary Policy")[3] and requiring conditional use permits for musicians to perform on private property adjacent to public sidewalks ("Permit Policy").[4] In conjunction with their complaint, Plaintiffs filed a motion for preliminary injunction to enjoin

---

[2] The Original Ordinance provided, in relevant part:

> A.  Definition. The following term shall be defined as follows:
>
> **PUBLIC PLACE**
>
> > Any place to which the general public has access and a right of resort for business, entertainment or other lawful purpose, but does not necessarily mean a place devoted solely to the uses of the public. It shall also include the front or immediate area of any store, shop, restaurant, tavern or other place of business and also public grounds, areas or parks.
>
> B.  It shall be unlawful for any person to stand or remain idle either alone or in consort with others in a public place in such manner so as to:
>
> > 1. Obstruct any public street, public highway, public sidewalk or any other public place or building by hindering or impeding or tending to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians; …
>
> C.  When any person causes or commits any of the conditions in this Section, a Police Officer or any Law Enforcement Officer shall order that person to stop causing or committing such conditions and to move on or disperse. Any person who fails or refuses to obey such orders shall be guilty of a violation of this Section.

[3] The City does not dispute the existence of such a policy as to activities that would "block any other persons [sic] rights of ways to the sidewalks/parking lots (that are not private)." (See Defendant's Response to Plaintiffs' SOF (Doc. No. 70) at ¶ 31). The City further argues the existence of such a policy is immaterial to any claim herein other than Plaintiffs' claim for nominal damages. (See id.).

[4] The City disputes the conditional use permit requirement for musicians as to any period after July 2020 and argues it is immaterial as to prior periods except to the extent Plaintiffs may have a claim for nominal damages. (Doc. No. 70 at ¶¶ 104-120).

enforcement of the City's Ordinance and other policies, alleging the City relied on the ordinance and policies to broadly prohibit expressive activities on public sidewalks in violation of their constitutional rights to free speech and due process, even when individuals engaged in such activities were not actually obstructing pedestrian traffic.

It is undisputed that Plaintiffs were told by the City and its officers on several occasions that they could not perform in the Loop while standing still pursuant to the Original Ordinance and that their activities required a permit. During the relevant period, other speakers were likewise prohibited from engaging in expression in the Loop, including individuals sharing their religious beliefs, a children's dance group, and a group of supporters of then-Presidential candidate Elizabeth Warren who were caroling in the Loop.[5]

In July 2020, the City amended the Original Ordinance to address Plaintiffs' claims by adding a *mens rea* requirement and deleting language that prohibited conduct "tending to hinder or impede" the passage of pedestrians or traffic.[6] The City also represented it would not enforce

---

[5] The City argues that Plaintiffs' facts relating to actions involving other individuals engaged in speech or performance (SOF at ¶¶ 221-294) are immaterial and irrelevant to any claim and should be stricken since an "as applied" challenge concerns only the party before the court. See Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017). Again, to the extent that an impermissible policy or custom could be inferred from the City's past conduct towards Plaintiffs and others under the Original Ordinance, the Court has considered those facts.

[6] The Amended Ordinance now provides:

> B.  It shall be unlawful for any person to stand or remain idle either alone or in consort with others in a public place in such manner so as to knowingly and actually:
>
> > 1. Obstruct any public street, public highway, public sidewalk or any other public place or building by hindering or impeding the free and uninterrupted passage of vehicles, traffic or pedestrians;
> >
> > 2. Commit in or upon any public street, public highway, public sidewalk or any other public place or building any act or thing which is an

a Non-Stationary Policy to the extent such a policy existed and would not require a property owner to obtain a conditional use permit to allow musicians to perform outside on private property adjacent to the public sidewalk. Based on the City's representations and the amendments to the Ordinance, Plaintiffs' motion for preliminary injunction was denied as moot.

On April 29, 2021, Plaintiffs renewed their motion for preliminary injunction, arguing that certain internal communications and actions taken by the City in March 2021 indicated the Amended Ordinance was being unconstitutionally applied. Specifically, on March 2, 2021, following an incident in which a business owner complained about the conduct of members of a religious group near the Chuck Berry statue located on Ackert Plaza in the Loop, the City's Chief of Police, Larry Hampton, sent an email to his command staff reminding them that "tables or large props set up anywhere on sidewalks or throughout the Delmar Loop public access areas" is prohibited "without City Hall approval letters from City Officials" and that there could be no obstruction of the Chuck Berry statue, except for "pictures and brief onlookers." Notably, Chief Hampton stated that "[m]usicians and speech groups can continue to play their instruments and practice their free speech elsewhere if they are not violating any laws, ordinances, and private property."

---

obstruction or interference to the free and uninterrupted use of property or with any business lawfully conducted by anyone in or upon of facing or fronting on any such public street, public highway, public sidewalk, or any other public pace or building all of which prevent the free and uninterrupted ingress, egress and regress therein, thereon and thereto …

C.  When any person causes or commits any of the conditions in this Section, a Police Officer or any Law Enforcement Officer shall order that person to stop causing or committing such conditions and to move on or disperse. Any person who fails or refuses to obey such orders shall be guilty of a violation of this Section.

The following day, March 3, 2021, Douglas was performing while sitting in a chair on the public sidewalk across from Fitz's restaurant at the northwest corner of Delmar Boulevard and Melville Avenue, in the vicinity of the Chuck Berry statue, when he was approached by City Police Sergeant Reginald Hope. Earlier that day, Chief Hampton observed Douglas on a police surveillance camera take a chair from a nearby business and start performing while sitting in the chair. At that time, it appeared to Chief Hampton that Douglas might be obstructing pedestrian traffic. Chief Hampton directed Sergeant Hope to advise Douglas that he was potentially obstructing in that area.[7] Sergeant Hope told Douglas his chair was "blocking traffic" and that the City wanted to keep the area around the Chuck Berry statue "clear." When Douglas asked if he was blocking traffic, Sergeant Hope responded that "the seat thing is probably the biggest issue" and told Douglas he could sit on the concrete wall to perform at the same location. However, Douglas decided to leave because it was time to pick up his brother. As demonstrated by the record, at no point was Douglas told to stop performing or move locations.

Apart from his March 3, 2021 encounter with Sergeant Hope, Douglas has not had any other interactions with City police officers and continues to perform in the Loop. Similarly, since October 2020, Jennings has performed regularly at his chosen location in front of the Tivoli Theatre without incident.

Plaintiffs also rely on the claim of another street musician, Albert Estes, II, who alleges that on March 8, 2021 between noon and 2:00 p.m., while exiting his truck to play his trumpet in front of the parking lot between the Tivoli Theatre and PokeDoke, he was told by a "middle-aged African American" male police officer that he could not play music on the sidewalk in front of

---

[7] The interaction between Sergeant Hope and Douglas is memorialized on Hope's body camera footage. (Doc. No. 56-3 at 89).

the parking lot while seated in a chair. The City disputes Estes's claim, having been unable to verify it upon investigation. Plaintiffs then submitted a second declaration in which Estes states he might have been mistaken as to the date or time of the alleged interaction.

Lastly, Plaintiffs argue that while the City suppresses expressive activities on public sidewalks in the Loop under the guise of obstruction, it applies a different standard to commercial businesses that extend their operations onto those same sidewalks. City Code § 605.290 related to outdoor dining allows restaurants to secure an outdoor dining permit for the placement and storage of dining furniture on public sidewalks for ten months out of the year. Pursuant to the ordinance, all outdoor dining furniture must be placed in such a way to maintain a minimum four-foot-wide clear zone for pedestrians. In addition, City Code § 400.2220(C) allows commercial businesses to place portable "sandwich board" signs on public sidewalks, provided there is a four-foot-wide clear zone for pedestrians.

The Court held a hearing on July 23, 2021 and, after considering the arguments and evidence presented at the hearing and the proposed findings of fact and conclusions of law submitted by the parties, denied Plaintiffs' renewed motion on October 22, 2021. The Court concluded that Plaintiffs failed to show, based on the application of the Amended Ordinance in two isolated incidents, that it unduly restricts free speech in light of the City's legitimate interest in regulating pedestrian traffic or that it fails to accord with the due process requirement of fair notice. The Court also concluded that in the absence of any additional record evidence, Plaintiffs failed to establish a policy or custom that deprived them of their constitutional rights, noting that to date, no musician, including Plaintiffs, has been arrested, threatened with arrest, or issued any citation for violating the challenged Ordinance, either in its original form or as amended.

Lastly, the Court found Plaintiffs' argument regarding the City's Outdoor Dining Ordinance was unavailing because it does not implicate expressive activities and because allowing a four-foot clearance area for restaurant patrons does not establish that a four-foot clearance area is a reasonable standard under all circumstances.

Plaintiffs filed their motion for summary judgment on July 20, 2021 requesting the Court find and declare that the Original Ordinance was facially unconstitutional because it violated the Due Process Clause; that the Original Ordinance violated the First Amendment; and that the Non-Stationary Policy and Permit Policy violate the First Amendment and Due Process Clause. Plaintiffs also seek declaratory and injunctive relief based on an "as applied" challenge to the Amended Ordinance. Plaintiffs ask that the City be enjoined from enforcing the Amended Ordinance so long as a four-foot pedestrian zone remains clear and that they be awarded nominal damages for the alleged infringement of their First Amendment rights on those occasions in 2019 and 2020 when they were allegedly told they could not perform in the Loop.

For the following reasons, the Court will grant summary judgment on Plaintiffs' claims for nominal damages for violations of their constitutional rights under the Original Ordinance; grant summary judgment on Plaintiffs' claims for declaratory relief and nominal damages for violations of their constitutional rights under the City's Non-Stationary Policy and Permit Policy; and deny summary judgment on Plaintiffs' claim for declaratory and injunctive relief regarding the Amended Ordinance.

## II.      Legal standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all

7

of the information before the court shows "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 1999).

**III.   Discussion**

**A.    Count I - Ordinance § 215.720**
**Violation of the First and Fourteenth Amendments**
**Claim for Nominal Damages and Declaratory and Injunctive Relief**

Plaintiffs assert they are entitled to summary judgment on Count I of their complaint because the Ordinance, in both its original and amended forms, burdens more speech than necessary for the City to achieve a significant governmental interest in promoting the free flow of pedestrian traffic on its sidewalks. Plaintiffs argue the record shows the City has used the Ordinance to target individuals engaged in public expression even when they were not actually

8

obstructing pedestrian traffic and continues to do so post-amendment, as reflected in Chief Hampton's March 2, 2021 email, the March 2021 stops of Douglas and Estes, and Jennings's testimony that he observed two musicians who stopped performing or setting up in front of the Chuck Berry statue after being approached by a police officer in early May of 2021.

The City responds that any facial challenge to the Original Ordinance is moot in light of the Amended Ordinance and that the Amended Ordinance is not being unconstitutionally applied to Plaintiffs. The City disputes the Estes incident and argues that the two instances referred to by Jennings are inconclusive given his admissions that he did not hear any of the conversation between the musicians and the police officer and that since October 2020 he has seen other musicians perform without incident. The City notes that aside from the March 3, 2021 incident involving Douglas, Douglas has performed in the Loop without incident since July 2020. In further response, the City argues that allegations involving other individuals engaged in expressive activities do not establish that the Amended Ordinance or any of the other policies with which Plaintiffs take issue have been unconstitutionally applied as to them since an as-applied challenge only concerns the party currently before the court. See Phelps-Roper v. Ricketts, 867 F.3d 883, 896 (8th Cir. 2017) (internal quotation omitted).

In reply, Plaintiffs clarify they are not seeking declaratory or injunctive relief based on any facial challenge to the Original Ordinance but are seeking nominal damages for violations of their rights under the First Amendment. They argue the Amended Ordinance does not moot their claims arising from the Original Ordinance because they suffered a past injury traceable to the Original Ordinance that may properly be addressed by an award of nominal damages. See Uzuegbunam v. Preczewski, 141 S. Ct. 792, 802 (2021) ("[N]ominal damages provide the

necessary redress for a completed violation of a legal right."). Plaintiffs suggest that at a minimum, they are entitled to nominal damages of $1.00 for the violation of their rights. The City recognizes that Plaintiffs may be entitled to $1.00 in nominal damages for those instances in 2019 and early 2020 when they were told they could not perform in the Loop.

A government can regulate its public spaces provided that any restriction on the time, place, or manner of speech in a traditional public forum must be content and viewpoint neutral[8], leave open ample alternative channels of communication, and be narrowly tailored to further a substantial governmental interest. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The requirement of narrow tailoring is satisfied "so long as the regulation promotes a substantial government interest," such as promoting the free flow of traffic on streets and sidewalks, "that would be achieved less effectively absent the regulation." Ward, 491 U.S. at 799 (quotation omitted). However, the regulation "need not be the least restrictive or least intrusive means of doing so." Id. at 798. To determine whether a regulation is substantially broader than necessary, courts assess whether the regulation leaves open ample alternative channels of communication. Phelps-Roper, 697 F.3d at 695.

Here, it is undisputed that prior to July 2020, the City enforced the Original Ordinance against Plaintiffs and others by prohibiting them from remaining stationary on public sidewalks, even when there was no actual obstruction of pedestrian traffic, and by requiring them to have a permit. (SOF at ¶¶ 19-66, 134-177, 206-219). Enforcement in this manner is not narrowly tailored to advance a significant governmental interest and burdens substantially more speech

---

[8] As the Court previously noted, the Ordinance, in both its original and amended forms, is directed at obstruction. Nevertheless, both sides have analyzed it as a "time, place, and manner" restriction on speech.

than necessary. See McCullen v. Coakley, 573 U.S. 464, 498-87 (2014); Ward, 491 U.S. at 791. The City recognized as much by amending the Original Ordinance, thereby mooting Plaintiffs' claims for declaratory and injunctive relief. Like the plaintiffs in Uzuegbunam, Plaintiffs, who continue to perform in the Loop, have alleged no actual damages. Nevertheless, the Supreme Court held the plaintiffs could pursue their action by pleading a request for nominal damages. 141 S. Ct. at 802. Thus, the Court concludes that Plaintiffs are entitled to summary judgment on their claim for nominal damages for violations of their First Amendment rights under the Original Ordinance. See Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005) ("[N]ominal damages are the appropriate means to vindicate constitutional rights whose deprivation has not caused an actual, provable injury[.]") (quotation omitted).

As for the Amended Ordinance, however, Plaintiffs fail to demonstrate – on the record before the Court – that it violates the First Amendment. Plaintiffs continue to point to internal email communications, deposition testimony, the March 3, 2021 stop of Douglas, and City Manager Gregory Rose's confirmation that the stop followed City policy[9], as evidence the City is enforcing the Amended Ordinance when there is no actual obstruction of pedestrian traffic. Yet, it is undisputed that since the incident involving Douglas in March, no musician, including Plaintiffs, has been stopped or prohibited from performing under the Amended Ordinance, and that Plaintiffs continue to perform in the Loop. Chief Hampton's email prohibiting tables and "large props" on sidewalks and obstruction of the Chuck Berry statue, was in direct response to a situation involving the Black Hebrew Israelites and did not concern either Plaintiff.

Plaintiffs also continue to argue that the City's permissive approach to commercial activity on public sidewalks in the Loop is further evidence the Amended Ordinance is unconstitutional as applied; however, the Court previously found this argument inapposite. First, the City's Outdoor Dining Ordinance does not implicate expressive activities. Secondly, allowing a four-foot clearance for restaurant patrons does not establish that a four-foot clearance area is a reasonable standard under all circumstances. Indeed, Plaintiffs have acknowledged that a person standing in the middle of a 19-foot-wide sidewalk, with four feet of clearance, could still be actually obstructing pedestrian traffic. Again, "[t]he validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests" or the degree to which those interests should be promoted. Ware, 491 U.S. at 799.

Plaintiffs argue the Amended Ordinance does not leave open ample alternative channels because they are prohibited from performing in the Loop if their presence may cause a pedestrian to pause or alter their chosen path in any minor way. This is not the case. According to Sgt. Hope, he spoke with Douglas at Chief Hampton's direction about Douglas's unauthorized use of a chair and the potential for blocking the sidewalk at his location. Douglas did not tell Sgt. Hope he had permission to use the chair. The recording of Sgt. Hope's conversation with Douglas demonstrates that he did not tell Douglas he could not perform or that he needed to leave or move from the area. In fact, Sgt. Hope advised Douglas he could sit on the concrete structure at his chosen location and continue performing. Douglas left the area because he had to pick up his

---

[9] Rose testified it was possible for "a single individual … standing by themselves stationary" to be blocking access to the Chuck Berry statue and that even if there is another path available, "an individual should be able to get to the Chuck Berry statue whatever way they choose, if someone happens to be standing there, if you have to take two steps to get around them, you've been obstructed."  (SOF at ¶¶

brother. He continues to perform in the Loop, as does Jennings. The disputed incident with Estes has not been verified and the two instances referred to by Jennings are inconclusive.

Further, the Amended Ordinance does not forbid all expressive activities on the sidewalks in the Loop. It merely forbids a person from positioning himself in a way that obstructs the reasonable flow of pedestrian traffic. "The First Amendment ... does not guarantee [speakers] access to every or even the best channels or locations for their expression." Josephine Havlak Photographer, Inc. v. Village of Twin Oaks, 195 F. Supp. 3d 1065, 1078-79 (E.D. Mo. 2016) (internal quotation omitted). Plaintiffs have not shown, based on the application of the Amended Ordinance in two isolated incidents – one of which has not been verified – that it unduly restricts free speech given the City's legitimate interest in regulating pedestrian traffic. Accordingly, the Court concludes that Plaintiffs are not entitled to summary judgment on their claim in Count I that the Amended Ordinance as applied to them violates their First Amendment rights.

**B.      Count II - Ordinance § 215.720**
**Violation of the Due Process Clause of the Fourteenth Amendments**
**Claim for Nominal Damages and Declaratory and Injunctive Relief**

Plaintiffs assert they are entitled to summary judgment on Count II because the Original Ordinance, in prohibiting conduct that "tend[ed] to hinder or impede" the passage of pedestrians, failed to provide fair notice of the prohibited conduct, and encouraged arbitrary enforcement on its face, and was arbitrarily enforced against them. It is undisputed that City Manager Rose testified that under the Original Ordinance, "if an individual was simply stationary for a period of time, it could be interpreted that that person was tending to obstruct." (SOF at ¶¶ 11-13). City

---

100, 204).

officers were instructed to (and did) enforce the Ordinance if an individual simply remained stationary while engaged in performance or speech on the public sidewalks. (SOF at ¶¶ 18, 31-51, 98-99). It is also undisputed that Plaintiffs were stopped on numerous occasions by City officers and told they could not perform while stationary or without a permit.

An ordinance violates due process if it fails to provide fair warning that certain conduct is prohibited, see Stahl v. City of St. Louis, 687 F.3d 1038, 1040 (8th Cir. 2012), or minimal guidelines to govern law enforcement, thereby encouraging arbitrary enforcement, Langford v. City of St. Louis, Missouri, 3 F.4th 1054, 1059 (8th Cir. 2021) (citing Smith v. Goguen, 415 U.S. 566, 574 (1974)). The Original Ordinance was not limited to *actual* obstruction; instead, it prohibited conduct "*tending* to hinder or impede the free and uninterrupted passage of vehicles, traffic or pedestrians." It failed to provide minimal guidelines to law enforcement officers such that a violation depended upon an officer's arbitrary interpretation of what constitutes "tending to hinder or impede" pedestrian traffic. The City recognized as much and amended the Original Ordinance, thereby mooting Plaintiffs' claims for declaratory and injunctive relief. Nevertheless, as discussed above in Section III.A., Plaintiffs can still pursue a claim for nominal damages as "redress for a completed violation of a legal right." Uzuegbunam, 141 S. Ct. at 802. Plaintiffs are, therefore, entitled to summary judgment on their claim for nominal damages for violations of their rights to due process under the Original Ordinance. Again, Plaintiffs suggest that at a minimum, they are entitled to nominal damages of $1.00 for the violation of their rights.

Plaintiffs further assert they are entitled to summary judgment because the Amended Ordinance continues to be arbitrarily applied pursuant to the City's policy of applying an overly broad and arbitrary interpretation of "obstruction." According to Plaintiffs, the undisputed facts

show that City police officers have unfettered discretion to enforce a vague interpretation of "obstruction" to prohibit conduct even if it does not actually hinder or impede pedestrian traffic (SOF at ¶¶ 87-89, 93-94), pursuant to Chief Hampton's instruction that no "large props" are permitted (id. at ¶¶ 87-89) and the City's interpretation of "obstruction" to include momentarily requiring pedestrians to slightly alter their path (id. at ¶¶ 98-100, 200, 203-204).

An ordinance violates the right to be free from a deprivation of due process if it fails to give fair warning that certain conduct is prohibited. Stahl, 687 F.3d at 1040. But where an ordinance "is clear and provides fair notice as to what conduct is deemed likely to cause a traffic problem," it is not unconstitutionally vague. Id. at 1041. Like the ordinance at issue in Langford, 3 F.4th 1054, the Amended Ordinance prohibits a person from standing or remaining idle in a public place "in such a manner as to knowingly and actually obstruct any ... public sidewalk ... by hindering or impeding the free and uninterrupted passage of ... pedestrians." The Eighth Circuit found these terms "widely used and well understood," and that citizens should have little difficulty understanding them. Id. at 1059 (citations omitted). The Eighth Circuit further found the ordinance accords with the due process requirement to provide "minimal guidelines to govern law enforcement." Id. "That officers must employ some degree of judgment in determining whether a person has positioned herself in a manner that obstructs the reasonable flow of traffic does not render the ordinance unconstitutional." Id.

Accordingly, the Court concludes that Plaintiffs are not entitled to summary judgment on their claim in Count II that the Amended Ordinance as applied to them violates their rights to due process.

C.   **Counts III and IV – Non-Stationary Policy**
    **Violation of the First Amendment and Due Process Clause**

**Claim for Nominal Damages and Declaratory and Injunctive Relief**

It is undisputed that beginning in June 2019, the City instituted a policy that the Original Ordinance forbid individuals engaged in speech or performance from remaining stationary on public sidewalks (SOF at ¶¶ 31-55, 65-66), and that Plaintiffs were told by the City and its officers on several occasions they could not perform in the Loop while standing still pursuant to the Original Ordinance. Plaintiffs assert they are entitled to summary judgment on Counts III and IV because the Non-Stationary Policy violates the First Amendment for the same reasons the Ordinance itself violates the First Amendment and is unconstitutionally vague in violation of the Due Process Clause.

In response, the City argues there is no basis for Plaintiffs' claims for declaratory and injunctive relief because a Non-Stationary Policy does not presently exist, citing McCarthy v. Ozark Sch. Dist., 359 F.3d 1029, 1035-36 (8th Cir. 2004) (finding plaintiffs' challenge to an immunization statute moot after the legislature voluntarily amended the statute to include "new exemptions" and rejecting plaintiffs' contention that the "capable of repetition" exception applied because the legislature "might repeal the new exemptions provision at any time if not prohibited from doing so by court order").

Plaintiffs reply that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," Abdullah v. Cty. of St. Louis, Mo., 52 F. Supp. 3d 936, 947 (E.D. Mo. 2014) (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000) (quoting City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982)), and that there has been no assurance from the City that a Non-Stationary Policy would not be implemented again in the future.

16

The Non-Stationary Policy restricts protected expression by prohibiting Plaintiffs and others from remaining stationary on public sidewalks, even when there was no actual obstruction of pedestrian traffic. As discussed in Section III.A, such a restriction is not narrowly tailored to advance a significant governmental interest and burdens substantially more speech than necessary in violation of the First Amendment. McCullen, 573 U.S. at 498-87; Ward, 491 U.S. at 791. Likewise, as discussed in Section III.B., a policy that fails to provide fair notice of prohibited conduct or minimal guidelines for enforcement violates the Due Process Clause. See Stahl, 687 F.3d at 1040; Langford, 3 F.4th at 1059. Here, the Non-Stationary Policy provides no guidance to either Plaintiffs or City officers and leaves matters of enforcement dependent upon an officer's arbitrary interpretation of "stationary," regardless of the actual impact on pedestrian traffic. For these reasons, Plaintiffs are entitled to summary judgment on their claims in Counts III and IV for a declaration that the Non-Stationary Policy violates the First Amendment and Due Process Clause and on their claims for nominal damages for violations of those rights. See Uzuegbunam, 141 S. Ct. at 802.

Plaintiffs also assert entitlement to a permanent injunction prohibiting the City from continuing to enforce the Non-Stationary Policy. The standard for determining whether a permanent injunction should issue is essentially the same as the standard for a preliminary injunction except that the movant must show actual success on the merits rather than a likelihood of success on the merits. Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church, 634 F.3d 1005, 1012 (8th Cir. 2011). "If a court finds actual success on the merits, it then considers the following factors in deciding whether to grant a permanent injunction: (1) the threat of irreparable harm to the moving party; (2) the balance of harms with

any injury an injunction might inflict on other parties; and (3) the public interest." Oglala Sioux Tribe v. C & W Enters., Inc., 542 F.3d 224, 229 (8th Cir. 2008); Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). Because summary judgment in Plaintiffs' favor constitutes success on the merits, the Court considers the remaining factors.

Regarding the threat of irreparable harm, it is undisputed that since the incident with Douglas in March 2021, Plaintiffs have continued to perform in the Loop without issue. Injunctive relief is only warranted where the injury is threatened and occurring at the time of the motion. See Weed v. Jenkins, No. 4:15CV140 RLW, 2015 WL 6555413, at *4 (E.D. Mo. Oct. 28, 2015) (emphasis added) (citing Elrod v. Burns, 427 U.S. 347, 373-74 (1976)). Although Plaintiffs express concern that the Non-Stationary Policy could be revived in the future, they have not shown the "harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Id. (quoting Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)).

When considering the balance of harms, courts consider, among other things, the threat to each of the parties' rights and whether the non-movant has already taken remedial action. NTD I, LLC v. Alliant Asset Mgmt. Co., LLC, 337 F. Supp. 3d 877, 889 (E.D. Mo. 2018). As stated above, Plaintiffs, who continue to perform in the Loop, have not demonstrated any irreparable harm. Furthermore, the City has taken remedial action, by amending the Ordinance, by not enforcing the Non-Stationary Policy, and by not requiring conditional use permits for musicians to perform on private property adjacent to public sidewalks. Thus, the Court finds the considerations of balance between harm and injury and of the public interests do not favor

Plaintiffs. Accordingly, the Court will deny Plaintiffs' motion for summary judgment on their claims for injunctive relief in Counts III and IV.

      **D.**      **Count V – Permit Policy**
              **Violation of the First Amendment**
              **Claim for Nominal Damages and Declaratory and Injunctive Relief**

Plaintiffs assert they are entitled to summary judgment on Count V because the Permit Policy is an unconstitutional prior restraint on speech in violation of the First Amendment. The City argues there is no basis for Plaintiffs' claims for declaratory and injunctive relief because the City is not requiring a conditional use permit for performing music on private property. See McCarthy, 359 F.3d at 1035-36. In reply, Plaintiffs argue there is no evidence the City's enforcement of its Permit Policy could not reasonably be expected to recur absent an injunction, citing Bennie v. Munn, 822 F.3d 392, 397 (8th Cir. 2016) (holding regulators' voluntary cessation of improper inquiries did not moot claims for declaratory and injunctive relief against future retaliation). It is undisputed the acting zoning administrator has chosen to follow the direction of the City's counsel that a conditional use permit is not required "at this point" (SOF at ¶ 118); however, a future zoning commissioner could interpret the City Code differently (id. at ¶ 120).

It is further undisputed that throughout the relevant period, City officials have instructed Plaintiffs to obtain different kinds of permits to perform in the Loop. For example, when Douglas performed in FroYo's outdoor dining area with the manager's permission, he was informed that he could not play music in the outdoor dining area unless FroYo's outdoor dining permit specifically allowed musicians to perform. (SOF at ¶ 143). When Jennings asked about permits after being told he needed one, he was first provided with a block party permit. (SOF at ¶

212). On July 22, 2019, Libbey Tucker, Assistant to the City Manager, presented a letter saying business owners "may contact the City Manager's office for approval" if they "engage[] and support[] a performer on their own private property." (SOF at ¶ 59). Then, that same month, Clifford Cross, Director of Planning and Development determined that Vintage Vinyl would need a conditional use permit for Jennings to perform under its marquee. (SOF at ¶¶ 112-120).

The City's conditional use permit application process requires twelve copies of a memo detailing the applicant's historical information, reasoning for venue location, and the estimated impact of the conditional use such as usual traffic volumes at the location and surrounding areas and how the conditional use will affect traffic flow and volume. (SOF at ¶¶ 105-107). It also requires twelve copies of a site plan, survey, or to-scale diagram and a non-refundable $250 fee. (Id.). The application must be submitted 28 days in advance of the Planning Commission's regular monthly meeting and must be separately approved by the City Council. (SOF at ¶¶ 108-110).

There is a "heavy presumption" against the validity of ordinances that create prior restraints on speech; however, they will be upheld if they meet the constitutional standards for time, place, and manner regulations, Vill. of Twin Oaks, 864 F.3d at 913 (citing Forsyth County v. The Nationalist Movement, 505 U.S. 123, 130 (1992) (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963)), leave open ample alternative channels of communication and are narrowly tailored to further a substantial governmental interest, Ward, 491 U.S. at 791. The City identifies no significant governmental interest in regulating the performance of unamplified music on private property in the Loop. Although the City clearly has an interest in promoting the free flow of pedestrian traffic on its *public* sidewalks, the requirement that businesses obtain a

conditional use permit to allow a musician to perform on their private property does not further that interest. As a result, the Permit Policy is not narrowly tailored to advance a significant governmental interest and burdens substantially more speech than necessary in violation of the First Amendment. The Court therefore concludes that Plaintiffs are entitled to summary judgment on their claim in Count V for a declaration that the Permit Policy violates their First Amendment rights and on their claim for nominal damages for violations of those rights. See Uzuegbunam, 141 S. Ct. at 802.

Plaintiffs also assert entitlement to a permanent injunction prohibiting the City from continuing to enforce the Permit Policy. As discussed above, there is no evidence the City is currently enforcing the Permit Policy or reasonably likely to enforce it in the future. Because Plaintiffs have continued to perform in the Loop, they do not demonstrate irreparable harm. Moreover, the City has taken remedial action, by amending the Ordinance, by not enforcing the Non-Stationary Policy, and by not requiring conditional use permits for musicians to perform on private property adjacent to public sidewalks. Thus, the considerations of balance between harm and injury and of the public interests do not favor Plaintiffs. Accordingly, the Court will deny Plaintiffs' motion for summary judgment on their claims for injunctive relief in Count V.

## IV.    Conclusion

For these reasons, the Court finds and concludes that Plaintiffs are entitled to summary judgment on their claims for nominal damages for violations of their constitutional rights under the Original Ordinance and the City's Non-Stationary and Permit Policies. Plaintiffs have represented in their motion that they have no evidence of actual damages beyond nominal damages and suggest they are entitled to at least $1.00 for the violation of their rights. Nominal

damages are the appropriate means "to vindicate constitutional rights whose deprivation has not caused an actual, provable injury." Corpus, 430 F.3d at 916 (quoting Westcott v. Crinklaw, 133 F.3d 658, 662 (8th Cir. 1998)). The Eighth Circuit has recognized one dollar as an appropriate value for nominal damages. Id. (citing Risdal v. Halford, 209 F.3d 1071, 1073 (8th Cir. 2000)). The Court therefore awards Plaintiffs the sum of $1.00 in nominal damages for the constitutional violations alleged in Counts I through V of their complaint.

The Court further finds and concludes that Plaintiffs are entitled to summary judgment on their claims in Counts III, IV, and V for declaratory relief regarding the City's Non-Stationary and Permit Policies. The Court finds and declares that the City's policy of forbidding individuals engaged in speech or performance from remaining stationary on public sidewalks (Non-Stationary Policy) is a violation of the First Amendment and Due Process Clause, both facially and as-applied. The Court further finds and declares that the City's policy of requiring a permit for musicians to play unamplified music on private property adjacent to public sidewalks is an unconstitutional prior restraint in violation of the First Amendment. Plaintiffs have not, however, demonstrated entitlement to summary judgment on their claims in Counts III, IV, and V for injunctive relief regarding the City's policies.

Lastly, the Court finds and concludes that Plaintiffs have not demonstrated entitlement to summary judgment on their claims in Counts I and II for declaratory and injunctive relief regarding the Amended Ordinance.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [54] is **GRANTED in part** and **DENIED in part** in accordance with the rulings herein.

A separate Partial Judgment accompanies this Memorandum and Order.

**IT IS FURTHER ORDERED** that a conference call with counsel is scheduled for **Wednesday, January 19, 2022 at 2 p.m.** Counsel participating in the conference call are directed to call the conference toll free at **1-877-810-9415**. The access code to enter the telephone conference for all participants is: **7519116**.

Dated this 18th day of January 18, 2022.

                                    _____
                                    **JOHN A. ROSS**
                                    **UNITED STATES DISTRICT JUDGE**