IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| RAVEN WOLF C. FELTON JENNINGS II, RAYMOND DOUGLAS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.   4:20-CV-00584-JAR |
| CITY OF UNIVERSITY CITY, MISSOURI, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES

Plaintiffs Raven Wolf C. Felton Jennings II and Raymond Douglas are the prevailing

parties in this action and submit the following suggestions in support of their motion for

attorneys' fees and expenses.

I.      **Background**

Plaintiffs filed a Complaint in this Court against Defendant City of University City,

Missouri on April 28, 2020. Plaintiffs claimed that University City Ordinance § 215.720 (the

"Ordinance") and Defendant's policies prohibiting performers from being stationary (the "Non-

Stationary Policy") and requiring them to obtain permits prior to performing (the "Permit

Policy"), unconstitutionally violate the First and Fourteenth Amendments by restricting their

rights to engage in expressive activities in the Delmar Loop in University City, Missouri. The

Complaint alleged: (i) the Ordinance violates First Amendment rights (Count I); (ii) the

Ordinance violates Fourteenth Amendment due process rights (Count II); (iii) the Non-Stationary

Policy violates First Amendment rights (Count III); (iv) the Non-Stationary Policy violates

Fourteenth Amendment due process rights (Count IV); and (v) the Permit Policy is an

1

unconstitutional prior restraint under the First Amendment (Count V). For each count, Plaintiffs

sought preliminary and permanent injunctions preventing enforcement, a declaratory judgment,

and nominal damages.

In response to this lawsuit, Defendant amended the Ordinance, removing its prohibition

on "tending to hinder or impede" the passage of pedestrians or traffic and adding a *mens rea*

requirement, and represented that it would not enforce the Non-Stationary Policy or the Permit

Policy against Plaintiffs.[1] Based on these representations, and upon request of Plaintiffs, this

Court denied Plaintiffs' initial motion for a preliminary injunction as moot. ECF No. 26.

However, following subsequent actions and communications by Defendant and its officials,

Plaintiffs renewed their motion for preliminary injunction. ECF No. 43. After full briefing and a

hearing, this Court denied Plaintiffs' renewed motion for preliminary injunction. ECF No. 83.

In order to fully investigate and prepare this case, Plaintiffs engaged in substantial

discovery, including taking five depositions, defending two depositions, and reviewing the

thousands of documents produced by Defendant. Plaintiffs further submitted a motion for

summary judgment, which was fully briefed by the parties. ECF No. 54. On January 18, 2022,

this Court granted in part and denied in part Plaintiffs' motion for summary judgment, granting

Plaintiffs' claims for: (i) nominal damages in Counts I and II of the Complaint related to the

original Ordinance in the amount of $1.00 and attorneys' fees, (ii) nominal damages in Counts

III and IV of the Complaint in the amount of $1.00 and attorneys' fees, (iii) declaratory relief in

Counts III and IV of the Complaint as requested by Plaintiffs, (iv) nominal damages in Count V

---

[1] Prior to the filing of this lawsuit, and in an attempt to resolve this matter without litigation, Plaintiffs' attorneys met with University City officials to explain their concerns with the existing ordinances. However, Defendant did not amend its Ordinance or policies until after this lawsuit commenced more than three months later. Ex. 1 (Declaration of Anthony E. Rothert).

of the Complaint in the amount of $1.00 and attorneys' fees, and (v) declaratory relief in Count

V of the Complaint as requested by Plaintiffs. ECF No. 97. A trial was set for January 26, 2022

to resolve the outstanding issues.

Shortly before trial, the parties negotiated a settlement of the outstanding issues on the

merits. ECF No. 102. The settlement terms included a payment to Plaintiffs in consideration for

their dismissal of the outstanding claims that were not resolved in their favor by this Court's

order on the motion for summary judgment. On March 15, 2022, the parties submitted a joint

stipulation of dismissal with prejudice, providing notice of their settlement. ECF No. 104.

**II.      Availability of Attorneys' Fees – Plaintiffs Are the Prevailing Parties**

The same federal law that prohibits deprivation of constitutional rights by state actors

provides for an award of attorneys' fees to the prevailing party. *See* 42 U.S.C. § 1988. The

Eighth Circuit has articulated the important public policy underlying the fee-shifting provisions

implicated by successful section 1983 litigation:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties
> should be paid, as is traditional for attorneys compensated by a fee-paying
> client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th
> Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. The
> primary purpose of this formulation is to promote diffuse private enforcement
> of civil rights law by allowing the citizenry to monitor rights violations at
> their source, while imposing the costs of rights violations on the violators. *See
> Id*. A plaintiff bringing a civil rights action "does so not for himself alone but
> also as a 'private attorney general,' vindicating a policy that Congress
> considered of the highest priority. If successful Plaintiffs were routinely
> forced to bear their own attorneys' fees, few aggrieved parties would be in a
> position to advance the public interest. . . ." *Newman v. Piggie Park
> Enterprises, Inc.*, 390 U.S. 400 (1968).

*Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).

The availability of attorneys' fees to successful litigants in civil rights cases serves two

significant purposes. First, the availability of fees ensures effective access to the judicial process

for litigants with meritorious claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Casey*, 12

F.3d at 805. Second, civil rights litigation serves the important public purpose of protecting and

clarifying important constitutional rights. *Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir.

1995). Not only Plaintiffs, but all citizens, benefit from Plaintiffs' success and the constitutional

rights protected by this case.

According to the Eighth Circuit, "[t]o obtain 'an award of litigation costs,' a party must

be a 'prevailing' or 'successful' party, i.e., 'one who has been awarded some relief by the

court.'" *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 909 (8th Cir. 2012)

(quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S.

598, 603 (2001)). The Eighth Circuit has "explicitly rejected a 'rule of proportionality' in civil

rights cases because tying the attorney's fees to the amount awarded would discourage litigants

with small amounts of damages from pursuing a civil rights claim in court." *Willson v. City of

Bel-Nor, Missouri*, No. 4:18-CV-003 RLW, 2021 WL 2255003, at *6 (E.D. Mo. June 3, 2021)

(quoting *Smith v. AS America, Inc.*, 829 F.3d 616, 625 n.8 (8th Cir. 2016)). In *Farrar v. Hobby*,

the Supreme Court held that a judgment for nominal damages causes a material alteration of the

legal relationship between the parties in that such a judgment "modifies the defendant's behavior

for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise

would not pay." 506 U.S. 103, 113 (1992). The Court specified "that the prevailing party inquiry

does not turn on the magnitude of the relief obtained." *Id*. at 114.

Moreover, Plaintiffs are not any less prevailing because they did not obtain the injunctive

relief they sought. Injunctive relief against the original ordinance was rendered unnecessary

because, in response to this suit, Defendant amended the ordinance—a decision vindicated by the

declaratory judgment entered on the merits and the award of nominal damages. Rather than press

4

their request for injunctive relief, the Plaintiffs—understanding that government officials are likely to act in accordance with the law as this Court has declared it—settled those claims.

### III.       Attorneys' Fees – Lodestar Amount

The general principles governing an award of attorneys' fees are well settled. To determine the product or "lodestar" figure, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates. *Hensley*, 461 U.S. at 433. The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986); *see also Blum v. Stenson*, 465 U.S. 886, 897 (1984); *accord Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (holding that "the lodestar award is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"); *Casey*, 12 F.3d at 805. In this regard, the Supreme Court has stated: "We . . . take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [section 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).

"The point of [fee-shifting statutes in civil rights cases] is that . . . officials proceed at their peril." *Carhart v. Stenberg*, 192 F.3d 1142, 1152 (8th Cir. 1999). "The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986). Although § 1983 defendants are "entitled to contest [a plaintiff's claims] vigorously[,] . . . once they do so they cannot then complain that the fees award should be less than claimed because the case could have been tried with less resources and with fewer hours expended." *Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1575 (11th Cir. 1985). Here, "the City's actions and choices in

defending this suit caused the expenditure of many hours by Plaintiff[s'] attorneys." *Willson*, 2021 WL 2255003, at *4. Defendant chose to adopt and enforce the Ordinance and policies and pursue a litigation posture of aggressively opposing Plaintiffs until the eve of trial. Despite amending the Ordinance and representing that it would not enforce the policies, Defendant continued to challenge Plaintiffs without requesting dismissal, summary judgment, or otherwise resolving this lawsuit. Plaintiffs are entitled to the fees they incurred in responding to Defendant's decisions.

      A.      <u>Hourly Rates</u>

In setting reasonable attorneys' fees, the touchstone is whether the hourly rate is in line with the prevailing fees in the community for comparable services by lawyers of comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1988). The Supreme Court has "repeatedly stressed that attorney's fees awarded under [section 1988] are to be based on market rates for the services rendered." *Jenkins*, 491 U.S. at 283-84 (citing *Blanchard v. Bergeron*, 489 U.S. 87 (1989)); *accord Riverside v. Rivera*, 477 U.S. 561 (1986); *Blum*, 465 U.S. 886. This is the case "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895. The "prevailing market rate method used in awarding fees . . . shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc). "The district court is given great latitude to determine a reasonable hourly rate because it is intimately familiar with its local bar." *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017) (quotations omitted).

The background and experience of the Plaintiffs' attorneys in this case are set forth in the Declarations of Anthony E. Rothert (Exhibit 1), Lisa Hoppenjans (Exhibit 2), Jessie Steffan (Exhibit 3), and Molly Carney (Exhibit 4). Their hourly rates are as follows:

| Attorney | Hourly Rate |
|----------|-------------|
| Anthony E. Rothert | $410.00 |
| Lisa Hoppenjans | $325.00 |
| Jessie Steffan | $300.00 |
| Molly Carney | $300.00 |
| Omri Praiss | $400.00 |
| Law Students[2] | $100.00 |

These rates are reasonable, especially given that this case involved a specialized and complex area of the law and required Plaintiffs to find attorneys knowledgeable in this area willing and able to expend significant amounts of time in a short period without any promise of compensation other than what this Court might award in the future. *See Willson*, 2021 WL 2255003, at *4 (finding the same hourly rates sought in this case for attorneys Rothert, Steffan, and Praiss to be reasonable in case litigating constitutionality of city ordinance under the First Amendment); *Fernandez v. St. Louis County*, 2021 WL 1889914, at *11-12 (E.D. Mo. May 11, 2021) (approving hourly rates of $575 and $475 per hour for civil rights attorneys in First Amendment case); *Republican Party of Minn. v. White*, 456 F.3d 912 (8th Cir. 2006) (approving hourly rates of $400 and $425 in a section 1983 appeal finding a First Amendment violation); *Chestnut v. Wallace*, No. 4:16-CV-1721 PLC, WL 5801041, at *3 (E.D. Mo. Sep. 29, 2020) (approving $450 hourly rate as reasonable in civil rights case); *Robinson v. City of St. Louis*, No.

---

[2] The law students whose time Plaintiffs seek an award of fees are Shontee Pant, Hanyan Zhou, Jeff Landers, Joshua Handelman, Mercer Martin, Joanna Johnston, Matthew Suddarth, and Corbin Robinson. *See* Ex. 2 (Declaration of Lisa S. Hoppenjans).

4:17-CV-156 PLC, 2020 WL 4673823, at *3 (E.D. Mo. Aug. 12, 2020) (awarding hourly rate of $400 to civil rights attorneys); *Holland v. City of Gerald, Mo.*, No. 4:08CV707 HEA, 2013 WL 1688300, at *4 (E.D. Mo. Apr. 18, 2013) (concluding an hourly rate of $450 was reasonable). "[T]he special skill and experience of counsel should be reflected in the reasonableness of the hourly rates." *Willson*, 2021 WL 2255003, at *6 (citing *Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991)) (also noting that attorney Rothert "has successfully prosecuted many First Amendment challenges to state and local laws").

Plaintiffs may appropriately seek an award of fees for the services of paralegals, law clerks, and law students. *Jenkins*, 491 U.S. at 286 (rejecting argument that award "should be based on cost" and instead should be "calculated according to the prevailing market rates") (internal quotation marks and citations omitted); *see also Jo Ann Howard & Assocs., P.C. v. Cassity*, No. 4:09-CV-01252 ERW, 2020 WL 870987, at *8 (E.D. Mo. Feb. 21, 2020) ("In this district, fees for work performed by paralegals and other legal assistants may be included in an award of attorneys' fees."), *aff'd sub nom. Jo Ann Howard & Assocs., P.C. v. Nat'l City Bank*, 11 F.4th 876 (8th Cir. 2021). Law student practice is expressly authorized by local rule. *See* E.D. Mo. L.R. 12.05. Here, the rate submitted by Plaintiffs for law student work is reasonable and consistent with other awards in this district. *See Davis v. Lancatser*, No. 4:13CV1638 HEA, 2019 WL 265098, at *3 (E.D. Mo. Jan. 18, 2019) (awarding $150 rate for law student's work in section 1983 action); *Koenig v. Bourdeau Const. LLC*, No. 4:13CV00477 SNLJ, 2014 WL 6686642, at *4 (E.D. Mo. Nov. 26, 2014) (finding $75 rate ($91.31 in present dollars) for second-year law student reasonable); *Robinson*, 2020 WL 4673823, at *3 (finding $150 rate for law clerks reasonable in section 1983 civil rights case).

Moreover, the hourly rates requested here are also reasonable when compared to current Missouri rates. [3] Furthermore, the declaration of attorney Amy Breihan (Exhibit 5) attests that these rates are reasonable, fair, and well within the range of market rates customarily charged by lawyers with similar experience and practice areas in Missouri.

The requested hourly rates are reasonable under the circumstances of this case.

B.    Computation of the Lodestar

The lodestar is the product of the attorneys' hourly rates multiplied by the number of compensable hours expended on the matter. *Hensley*, 461 U.S. at 433. Here, a reasonable fee can be set that is consistent with established case law and local rates and practices by multiplying the number of compensable hours[4] by the hourly rates of the Plaintiffs' attorneys.

The attorneys' billing records reflect that they billed a combined 464.48 hours on this case.[5] However, the attorneys have exercised judgment and reduced the hours for which they seek compensation by a total of 96.18 hours, in addition to the time voluntarily not submitted to this Court for review. In particular, they do not seek compensation for the time proved

---

[3]    A recent survey of billing rates in Missouri, which is attached to Mr. Rothert's Declaration (Ex. 1-B), estimates that the median 2021 Missouri billing rate was $330 per hour (noting the impacts of the pandemic were reflected in a decreased from the median 2019 Missouri billing rate of $370 per hour).

[4]    The number of hours worked and hours for which compensation is requested for each non-student attorney is included with his or her declaration, which incorporates an itemization of the hours and the work for which compensation is not sought. In including law student time, due to a large volume of billing records by law students, Plaintiffs' attorneys have not included all records for activities for which compensation is not sought. *See* Ex. 2.

[5]    This does not include the time spent by ACLU attorneys Gillian Wilcox, Emily Lazaroff, Kayla DeLoach, ACLU law clerks, clinic fellow Tobin Raju, and multiple clinic law students. *See* Ex. 1 and 2. While their contributions to the case were important, Plaintiffs exclude their hours to avoid any appearance of overbilling.

9

unnecessary, redundant, or, in retrospect, took longer than it should have. The number of hours

reflected in this table is reasonable:

|  | Hours | Rate | Total |
|---|---|---|---|
| Anthony E. Rothert | 66.5 | $410.00 | $27,265.00 |
| Lisa Hoppenjans | 150.86 | $325.00 | $49,029.50 |
| Jessie Steffan | 5.1 | $300.00 | $1,530.00 |
| Molly Carney | 24.8 | $300.00 | $7,440.00 |
| Omri Praiss | 15.3 | $400.00 | $6,120.00 |
| Law Students | 105.74 | $100.00 | $10,574.00 |
|  | 368.30 | Total: | $101,958.50 |

Additionally, Plaintiffs voluntarily endeavored not to bill for various hours and did not

submit all of the hours for which they would be entitled to seek compensation. Plaintiffs have

omitted various entries for substantive work, including time spent on the renewed motion for

preliminary injunction. The assistance of clinic students and law clerks reduced the number of

hours required by attorneys with higher billing rates and, ultimately, the amount of fees for

which reimbursement is sought. *See Davis*, 2019 WL 265098 at *4 (court noted that it "will not

dissuade attorneys from utilizing attorneys, law clerks, or paralegals with lower billing rates . . . .

Of course, it is reasonable and often necessary for the senior attorney to review the work of less

experienced or non-attorney colleagues.").

    C.    No Further Reduction to the Lodestar Is Warranted

Although the lodestar is a presumptively reasonable fee, it may be adjusted upward or

downward in certain circumstances. *Hensley*,  461 U.S. at 433. In determining whether a fee

award should be adjusted, courts examine: (i) whether the plaintiff failed to prevail on any

unrelated claims, and (ii) whether the level of success achieved by the plaintiff "makes the hours

reasonably expended a satisfactory basis for making a fee award." *Id*. at 435. Courts do not award

fees based simply on the number of claims upon which the plaintiff prevailed. *Hensley*, 461 U.S. at 436; *Casey*, 12 F.3d at 806 ("Once a party is found to have prevailed, '[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit.'"). Instead, for a fee to be reduced because relief was not granted on certain claims, the unsuccessful claims must be "unrelated" to those for which relief was granted. *Hensley*, 461 U.S. at 433.

Unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories." *Id*. Notably, the Supreme Court has observed that, in the context of allegations involving civil rights violations, "such unrelated claims are unlikely to arise with great frequency." *Id*. What is more common with civil rights cases is that "the Plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id*. And, in such a case, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id*. "Such a lawsuit cannot be viewed as a series of discrete claims." *Id*. Put another way, when a lawsuit involves common facts and related legal theories, "counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonable expended to achieve a successful result." *Hendrickson*, 934 F.2d at 164. Thus, a fee award should reflect "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. Moreover, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is

not a sufficient reason for reducing a fee." *Id*. at 435. "The result is what matters[; therefore] the

most critical factor is the degree of success obtained." *Id.* at 435, 436.

The Eighth Circuit Court of Appeals "has distilled a two-part test: (1) the potential fee-

generating claim must be substantial, and (2) it and the successful claim must arise from a

common nucleus of operative fact." *St. Louis Effort for AIDS v. Lindley-Myers*, 877 F.3d 1069,

1072 (8th Cir. 2017), *citing Rogers Group, Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 911-

13 (8th Cir. 2012) (finding "common nucleus of operative fact" where all claims related to the

same state law).  Moreover, the Eighth Circuit has declined to characterize a fee award as

unsuccessful for purposes of reduction where the court has not reached the merits of a mooted

claim. *Phelps-Roper v. Schmitt*, No. 06-4156-CV-C-FJG, 2019 WL 2152519, at *2 (W.D. Mo.

Mar. 27, 2019) (citing *Phelps-Roper v. Koster*, 815 F.3d 393, 399 (8th Cir. 2016)) ("[M]ooted

claims and/or the Court's rejection of certain grounds are not legally sufficient reasons for

reducing a fee."); *Hensley*, 461 U.S. at 435 (holding that a court's failure to reach certain

grounds is not a sufficient reason for reducing the fee award).

Here, Plaintiffs successfully obtained the relief that they sought through a combination of

means: the Court's partial grant of summary judgment, including declaratory and nominal relief,

Defendant's post-suit amendment of its ordinance, and settlement. Moreover, all of Plaintiffs'

claims involved passage and enforcement of the same Ordinance and policies, were based on

common facts tied to the same Ordinance and policies, and challenged Defendant's violation of

their constitutional rights under the same Ordinance and policies. When this Court denied

Plaintiffs' claims for declaratory relief on Counts I and II and injunctive relief as moot, it did so

based on Defendant's voluntary changes to the Ordinance and policies rather than based on the

merits of Defendant's constitutional claims, and still confirmed the availability of nominal

12

damages and attorneys' fees based on the prior violations of Plaintiffs' rights. ECF No. 96. Plaintiffs ultimately obtained the relief they requested in this case with the elimination of challenged policies as they existed at the time the lawsuit was filed. Moreover, this Court granted Plaintiffs' claims for nominal damages under each count, so there is no doubt that they were entitled to the damages they sought. *Lowry ex rel. Crow v. Watson Chapel Sch. Dist.*, 540 F.3d 752, 762 (8th Cir. 2008) ("[N]ominal damages must be awarded when a plaintiff establishes a violation of the right to free speech."). Because of Plaintiffs' overall success in a securing a decision that granted them the relief sought, no reduction of the lodestar is appropriate.

"[T]here is a 'strong presumption' that the lodestar figure is reasonable." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010); *accord Hendrickson*, 934 F.2d at 162 ("The lodestar award . . . is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar."). "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Jenkins v. Mo.*, 127 F.3d 709, 716 (8th Cir. 1997) (en banc). Plaintiffs "achieved victory in this case, no small feat for a civil-rights plaintiff." *Ladd v. Pickering*, 783 F. Supp. 2d 1079, 1096 (E.D. Mo. 2011).

Nor does the amount of monetary relief awarded determine the lodestar. "Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)); *see also City of Riverside*, 477 U.S. at 574 ("Unlike most private tort litigants, a civil-rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary

13

terms."). "Nominal relief does not necessarily a nominal victory make." *Farrar*, 506 U.S. at 121

(O'Connor, J., concurring). "While the monetary value of a nominal damage award must, by

definition, be negligible, its value can be of great significance to the litigant and to society."

*Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999). Here, Plaintiffs were not

only awarded nominal damages, but also received an important vindication of their First and

Fourteenth Amendment rights. Moreover, Plaintiffs obtained specific declaratory relief as to the

Non-Stationary Policy and Permit Policy which applies broadly to other individuals who engage

in similar activity in University City. Defendant changed its Ordinance and policies in reaction to

this lawsuit, also allowing others to exercise their rights of expression. An award of the lodestar

is appropriate.

**IV.      Expenses**

Plaintiffs also seek to recover the expenses incurred in the prosecution of this case.

Recoverable expenses include all costs and out-of-pocket expenses of Plaintiffs' attorneys.

*Neufeld v. Searle Labs.*, 884 F.2d 335, 342 (8th Cir. 1989); *see also Pinkham v. Camex, Inc.*, 84

F.3d 292, 294-95 (8th Cir. 1996) (holding that a reasonable attorneys' fee must include

"reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys"). The

expenses in this case are mediation fees ($1,275.93), discovery management fees ($2,379.50),

and service of subpoena fees ($455.00). *See* Ex. 1 at ¶ 11. Thus, Plaintiffs should be awarded

expenses of $4,110.43.

Plaintiffs have filed a bill of costs itemizing taxable costs. Should any of those expenses

be determined to be nontaxable, Plaintiffs request reimbursement be included as part of the

attorneys' fee.

V.        **Conclusion**

Based on the foregoing considerations, together with those set forth in the accompanying

declarations and other exhibits, this Court should award Plaintiffs attorneys' fees of $101,958.50

and expenses of $4,110.43 (less any costs taxed).


Respectfully Submitted,

s/ Molly Carney
Molly Carney, #70570MO
Anthony E. Rothert, #44827
Jessie Steffan, #64861MO
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, Missouri 63101
Phone: (314) 669-3420
arothert@aclu-mo.org
jsteffan@aclu-mo.org
mcarney@aclu-mo.org

Gillian R. Wilcox, #61278MO
ACLU OF MISSOURI FOUNDATION
406 West 34th Street, Ste. 420
Kansas City, MO 64111
Phone: (314) 652-3114
gwilcox@aclu-mo.org

Lisa Hoppenjans, #63890MO
Tobin Raju, #5638523NY
FIRST AMENDMENT CLINIC
WASHINGTON UNIVERSITY IN ST. LOUIS
SCHOOL OF LAW
One Brookings Drive, Box 1120
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu


*Attorneys for Plaintiffs*